**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROMSPEN MORTGAGE LIMITED PARTNERSHIP, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 19 C 5610 |
| SB WINNETKA, LLC, et al., | ) ) | |
| Defendants. | ) | |

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
ON COUNTERCLAIM OF DEFENDANT SOWLAT ENGINEERS, P.C.**

Romspen Mortgage Limited Partnership provided financing to SB Winnetka, LLC for a commercial real estate development in downtown Winnetka, Illinois, and SB Winnetka granted Romspen mortgages on the real property involved in the project to secure payment of the loans. SB Winnetka defaulted on its payment obligations to Romspen, and Romspen sued to foreclose on the mortgages. Several entities that provided materials and/or services on the project filed mechanic's lien claims against the property, and they are parties to the foreclosure suit as a result. Romspen has moved for summary judgment against Sowlat Engineers, P.C., one of the lien claimants. Romspen contends that the Sowlat's lien is not enforceable against Romspen, which is not an owner of the property, because it is an amended lien. Sowlat contests this. Romspen has moved for summary judgment. For the reasons stated below, the Court denies Romspen's motion.

**Facts**

In considering Romspen's motion, the Court views the evidence in the light most

favorable to the non-moving party, Sowlat, and draws reasonable inferences in Sowlat's favor.

In February 2017, Romspen provided an $11.75 million loan to SB Winnetka (the Owner).  Repayment of the loan is secured by mortgages on real property at 714-716 Elm Street in Winnetka and at 513-515 Lincoln Avenue in Winnetka.

In October 2016, Sowlat entered into a contract with SB One Winnetka—which acted as an agent for the Owner—to provide structural engineering services in connection with a redevelopment project regarding the property.  Sowlat alleges that it invoiced the Owner on various dates through August 30, 2017.

On November 30, 2017, Sowlat recorded an Original Contractor's Notice and Claim for Mechanics Lien (the 2017 Lien) against SB One Winnetka, SB Winnetka, and Elm Street Pharmacy in relation to work done under the October 2016 contract.  The 2017 Lien stated that the original contract price was $372,000 plus reimbursable expenses and that at the Owner's request it had provided additional services valued at $27,400.  Decl. of James M. Dash, Ex. 1 ¶¶ 4, 6.  The date on which Sowlat last performed services with respect to the claim in the lien was August 31, 2017.  *Id.* ¶ 7. The 2017 Lien stated that $192,743 was unpaid, plus interest at the rate of 10 percent per annum.  *Id.* ¶ 8.

On February 20, 2018, Sowlat recorded a Satisfaction and Release of Mechanics Lien (the Release), releasing the Owner from the $192,743 referenced in the 2017 Lien. Decl. of James M. Dash, Ex. 2 at 1.  In other words, at that point Sowlat said that the Owner's obligations had been satisfied and that its lien was no longer operative.

A little over five months later, on August 3, 2018, Sowlat recorded another

2

Original Contractor's Notice and Claim for Mechanics Lien (the 2018 Lien) against the same three parties that it named in the 2017 lien. Def.'s Countercl., Ex. D at 1. Sowlat asserted in the 2018 Lien that in late April 2017, the Owners authorized additional structural engineering services for a pedestrian bridge support in return for an additional fee, as an amendment to the October 2016 Sowlat contract. *Id.* ¶ 5. The 2018 Lien did not state when Sowlat began to perform this additional work. The 2018 Lien further stated that on or around January 16, 2018, the Owners instructed Sowlat to stop work on the pedestrian bridge and the public buildings at the project site and instead provide structural services to re-design the project, as an amendment to the Oct. 21, 2016 contract for an additional fee. *Id.* ¶ 6. These services were valued at $283,607. *Id.* ¶ 8. Sowlat stated that it last performed services represented by the 2018 Lien on April 9, 2018. *Id.* ¶ 9. The 2018 Lien stated that $40,864 was unpaid, with interest at the rate of 10 percent per annum. *Id.* ¶ 10.

In its counterclaim, Sowlat seeks to enforce the 2018 Lien against Romspen. Romspen has moved for summary judgment. It contends that the 2018 Lien is an amendment to the 2017 Lien and that under the Illinois Mechanics Lien Act, an amendment to a lien cannot be enforced against a non-owner like Romspen—which is a lender, not an owner of the property.

## Discussion

Summary judgment is proper when the moving party shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether there is a genuine factual dispute, a court views the record in the light most favorable to the non-moving party. *See, e.g., Hanover*

*Ins. Co. v. Northern Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014). Summary judgment is inappropriate when the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. *Id.*

The Mechanics Lien Act provides that anyone who contracts to improve land or a structure on land has a lien on the land and improvements on it "for the amount due to him or her for the material, fixtures, apparatus, machinery, services or labor, and interest at the rate of 10% per annum from the date the same is due." 770 ILCS 60/1(a). It is undisputed that Sowlat is a contractor within the meaning of the Act. To enforce its lien "against or to the prejudice of any other creditor or incumbrancer or purchaser," a contractor must, "within 4 months after completion, or if extra or additional work is done . . . within 4 months after the completion of such extra or additional work," file a lawsuit to enforce its lien or record "a claim for lien, verified by . . . affidavit," including the balance due and a description of the tract of land. *Id.* § 7(a). The same provision states (as relevant here) as follows:

> Such claim for lien may be filed at any time after the claimant's contract is made, and as to the owner may be filed at any time after the contract is made and within 2 years after the completion of the contract, or the completion of any extra work . . . thereunder, and as to such owner may be amended at any time before the final judgment.

*Id.* The parties appear to agree that the latter provision permits a contractor to "amend" its lien only as to the land's owner, not as to third parties. *See Cordeck Sales, Inc. v. Constr. Sys., Inc.*, 382 Ill. App. 3d 334, 360-61, 887 N.E.2d 474, 503 (2008); *Fed. Sav. & Loan Ins. Corp. v. Am. Nat'l Bank & Tr. Co.*, 115 Ill. App. 3d 426, 428, 450 N.E.2d 820, 822 (1983). Romspen argues that the 2018 Lien is an "amended" lien and thus not enforceable against Romspen, a non-owner.

4

Sowlat contends, however, and its evidence would permit a reasonable factfinder to find, that the 2018 Lien is a new and completely separate lien, not an "amendment" of the 2017 Lien. The statute does not define what it means to "amend" a lien, but the ordinary meaning of the term "amend" is to put right, change, modify, or alter. "Amend," *Merriam-Webster.com Dictionary*, https://www.merriam-webster.com/dictionary/amend (last viewed Mar. 13, 2021). Black's Law Dictionary similarly defines amend as "to correct or make usually small changes to (something written or spoken)" and "to change the wording of; specifically, to formally alter (a statute, constitution, motion, etc.) by striking out, inserting, or substituting words." "Amend," Black's Law Dictionary (11th ed. 2019). The 2018 Lien did not change, modify, or alter the 2017 Lien. The 2017 Lien had been satisfied, and Sowlat had released it. After that, Sowlat recorded a second lien, which based on the present record appears to have arisen from additional work it was asked to perform on the project.

Romspen's submissions on the present motion arguably may be read to suggest that as to a creditor, it's "one and done" for a lien claimant—in other words, that if a lien claimant records a lien on a particular construction project, it may never record a second lien on that project, no matter what happens. This would make no sense as an interpretation of the statute—particularly given the requirement to record a lien within four months after completing work. Consider the following hypothetical: a contractor completes all of its work on a construction project on January 31 and records its lien on May 30, just within the statutory four-month deadline. It is paid in full within thirty days. Then on July 1 the same contractor is hired by the owner to do additional work on the same construction project and completes that work by August 31. It then records a

5

second lien, within four months after completing the additional work. The construction project goes into default on its financing, and the contractor is not paid for the additional work it performed. The lender sues the owner (and lien claimants) for foreclosure, and the contractor counterclaims to enforce its second lien. Under Romspen's proposed rule, the contractor would not get the benefit of a lien for the additional work it did and *never* could have done so in this hypothetical, given the four-month statutory deadline for recording a lien after completing work. This cannot possibly be a correct reading of the statute under its language, or as a matter of policy: it would disincentivize contractors from taking on additional work on a project and would deprive property owners of the ability to rehire contractors who have already acquired significant experience working on the owner's project.

The cases cited by Romspen—primarily *Cordeck Sales* and *Federal Savings and Loan Insurance Corp. v. American National Bank and Trust Co.*—involve situations where the contractor was actually attempting to revise an existing lien by increasing the amount claimed under that lien. As the Court has explained, that is not what happened here. Sowlat released its lien arising from the work it initially performed, and then it recorded a second lien for additional work that it was asked to perform after its original contract. It did not amend the 2017 Lien. Indeed, having released the 2017 Lien, Sowlat *could not* have amended it—it was no longer operative. Romspen's contention that Sowlat cannot enforce the 2018 Lien because it previously recorded a different lien lacks merit.

## Conclusion

For the reasons stated above, the Court denies Romspen's motion for summary

judgment [dkt. no. 240].

Date:  March 13, 2021

_____

MATTHEW F. KENNELLY
United States District Judge